O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DAIJIAN NI<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES ET AL.<br><br>Defendants. | Case No. CV 08-3883 CAS (AJWx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

**I.     INTRODUCTION**

On June 13, 2008, plaintiff Dajian Ni petitioned this Court for de novo review of his naturalization application, which was denied by defendant the United States Citizenship and Immigration Service ("CIS") on May 28, 2008. Plaintiff also listed as defendants Jane Arellano, director of the CIS Los Angeles office; Dr. Emilio T. Gonzalez, director of the CIS; Michael Chertoff, Secretary of the United States Department of Homeland Security; and Michael Mukasey, United States Attorney

General.[1]

On January 21, 2009, defendants moved for summary judgment. On February 9, 2009, plaintiff filed his opposition. On February 23, 2009, defendants filed their reply. A hearing was held on March 9, 2009. After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

Plaintiff is a native and citizen of China. Plaintiff became a permanent resident of the United States on December 22, 1992, and is currently a resident of Los Angeles County. Plaintiff has applied for naturalization on two separate occasions. On November 3, 1997, plaintiff filed his first N-400 Application for naturalization. He was interviewed under oath by the Immigration and Naturalization Service ("INS"), hereinafter referred to as the CIS, on November 18, 1998, at which time he testified that the CIS had never taken any action to terminate his resident status. Certified Administrative Record ("CAR") at 90. In fact, the CIS had issued a Notice of Intent to Rescind on February 16, 1995, which was served on plaintiff on June 12, 1996. Id. at 118, 248-52. On September 12, 2005, the CIS denied plaintiff's N-400 application based on a lack of good moral character, as required for naturalization by 8 U.S.C. § 1427(a) and 8 C.F.R. § 316.10(b)(3)(iii). Id. 78-80.

Plaintiff again applied for naturalization on December 22, 2005. He was interviewed under oath on May 2, 2006, at which time he testified that he had never "given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal." Id. at 20. On July 6, 2007, the CIS denied plaintiff's second naturalization application, again because he failed to demonstrate good moral character. Id. at 6-8. Plaintiff filed a request for a review hearing pursuant to 8 U.S.C. § 1447(a) on August 1, 2007. Id. at 3.

---

[1] In accordance with Fed. R. Civ. P. 25(d), Michael Aytes is hereby substituted for Emilio T. Gonzalez as defendant in this case.

On May 28, 2008, the CIS denied plaintiff's appeal. Id. at 1-2. The CIS found that plaintiff had not established good moral character due to his criminal history. CAR at 1-2. In the absence of extenuating circumstances, an applicant cannot be found to have good moral character if he committed or was convicted of an unlawful act that reflects adversely on his moral character during the five year period prior to his application. 8 C.F.R. § 316.10(b)(3)(iii). Plaintiff was convicted of trespassing, in violation of C.P.C. §602(j), on October 30, 2001, within the statutory period.[2] Id. For that conviction, he was sentenced to summary probation for three years, and ordered to attend either rehabilitative sessions or psychiatric counseling. Id. Plaintiff was also arrested for, and convicted of, several crimes outside of the statutory period in the early 1990s.[3]

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks

---

[2]Although he was convicted of trespassing, plaintiff was originally arrested for stalking, in violation of C.P.C. § 646.9(a) . The arrest, which occurred on November 6, 2000, falls outside of the statutory period.

[3] On December 19, 1991, plaintiff was arrested for vandalism in violation of C.P.C. § 594(a) and resisting arrest, in violation of C.P.C. § 148(a). CAR at 24. He was convicted on the resisting arrest charge on April 20, 1992 and sentenced to one year of probation and 24 hours in jail. Id. On August 14, 1992, plaintiff was arrested for sexual battery, in violation of C.P.C. §234.4(D) and for annoying/molesting a child, in violation of C.P.C. §647.6. Id. Plaintiff was convicted on the sexual battery charge on September 8, 1992 and sentenced to three years of probation and 96 hours in jail. Id. On August 26, 1992, plaintiff was arrested for grand theft, in violation of C.P.C. § 487.1. Id. On July 20, 1993, plaintiff was arrested for forgery, in violation of C.P.C. §470. Id.

3

judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

Defendants argue that summary judgment should be granted because plaintiff has failed to establish any genuine issue of material fact. Mot. at 8. Defendants argue plaintiff's complaint does not offer any legal or factual argument as to why the CIS erred in rejecting his petition. Id. at 9. Defendants further argue that the CIS correctly denied plaintiff's application because plaintiff failed to establish good moral character

as required by 8 U.S.C. § 1427(a) and 8 C.F.R. §316.2(a)(7). Mot. at 13. In the absence of extenuating circumstances, an applicant lacks good moral character if he commits or is convicted of an act that adversely reflects upon his moral character during the five-year statutory period. 8 C.F.R. §316.10(b)(3)(iii). Defendants argue that plaintiff's 2001 conviction for trespassing is sufficient to bar his application for naturalization. Id. at 13. Defendants further argue that plaintiff's convictions and arrests prior to the statutory period also weigh against a finding of good moral character. Id. (citing 8 U.S.C. § 1427(e); 8 C.F.R. 316.10(a)(2)).[4] Defendants argue that, taken together, plaintiff's arrests and convictions indicate a lack of good moral character and an absence of subsequent reform. Id. at 13-14.

Moreover, defendants argue that the Court cannot find plaintiff to be a person of good moral character because he lied on his naturalization application. Mot. at 14. Pursuant to 8 U.S.C. § 1101(f)(6), a person cannot be found to have good moral character if he gives false testimony for the purpose of obtaining immigration benefits during the statutory period. Defendants argue that plaintiff lied when he stated on his second naturalization application that he had never "given false or misleading information to any U.S. government official while applying for any immigration

---

[4] 8 U.S.C. §1427(e) provides that "in determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a) of this chapter, the Attorney General shall not be limited to the applicant's conduct during the years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period."

Similarly, 8 C.F.R. §316.10(a)(2) provides that the CIS "is not limited to reviewing the applicant's conduct during the five years immediately preceding the filing of the application, but may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period, if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character."

benefit." Id. (citing CAR at 20). Defendants argue that this statement was false because plaintiff lied on his first naturalization application in 1998 when he stated that the CIS had never taken action to terminate his resident status. Id. (citing CAR at 90). In fact, the CIS had issued a Notice of Intent to Rescind Adjustment of Status three years earlier. Id.

Plaintiff responds that his good moral character is a disputed question of fact that should be resolved at a hearing. Opp'n at 3. Plaintiff argues that he is prepared to present witnesses who will testify to his good character and moral rehabilitation.[5] Id. Plaintiff contends that his conviction for misdemeanor trespass does not, as a matter of law, bar him from establishing good moral character. Opp. at 4-5. Plaintiff appears to argue that because the conduct that led to his trespassing conviction occurred outside the statutory period, the Court should not consider the conviction in determining whether he has established good moral character. Id. (citing Hovsepian, 359 F.3d at 1144). Plaintiff further argues that even if the trespassing conviction is considered, it would not automatically bar him from establishing good moral character because he can establish extenuating circumstances. Id. (citing 8 C.F.R. §316.1 (b)(3)(iii)). Plaintiff argues that the presence of extenuating circumstances is a factual question for the court to determine. Id.

Plaintiff further argues that any errors in his two applications were due to a misunderstanding rather than intentional deceit to receive an immigration benefit. Opp'n at 9. Plaintiff acknowledges that he was served with a Notice of Intent to Rescind on June 12, 1996. Id. However, plaintiff argues that the CIS issued him a lawful permanent resident card on September 19, 1997. Plaintiff contends that he understood this to mean that the CIS did not wish to seek rescission against him. Id. at 7-8. Plaintiff further argues that at the time he was interviewed, he believed his answers

---

[5] With his opposition, plaintiff submitted two sworn declarations from individuals who are prepared to testify to his reformation and present good moral character.

to be truthful. Plaintiff contends that because his native language is Chinese, he had a limited understanding of the legal concepts in the application. Id. at 9. Plaintiff argues that he answered the questions to the best of his ability and relied fully on his attorney, who was present at the interview. Id. Plaintiff contends that his alleged deceit for the purpose of obtaining an immigration benefit is a disputed question of fact that precludes summary judgment.

Defendants respond that plaintiff's arguments (1) that the conduct leading to his conviction for trespassing occurred before the statutory period; (2) that there may be "extenuating circumstances" in his case; and (3) that he never provided false testimony for the purposes of gaining an immigration benefit, are irrelevant because plaintiff fails to allege them in his petition. Reply at 4. Defendants further argue that summary judgment is appropriate because there are no genuine issues of material fact.

A person whose application for naturalization is denied, is entitled to judicial review pursuant to 8 U.S.C. § 1421(c). Section 1421(c) provides

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the plaintiff, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c). However, if a court concludes that there is no genuine issue of material fact, it may enter summary judgment without conducting a de novo hearing. Chan v. Gantner, 464 F.3d 289, 296 (2d. Cir. 2006) ("On [plaintiff's] interpretation of section 1421(c), moreover, district courts are required to hold bench trials even when there are no disputed issues of material fact. We think that result absurd.").

The Court concludes that defendants' motion for summary judgment should be granted. Defendants have demonstrated that the CIS properly denied plaintiff's application for failure to establish good moral character. Plaintiff's 2001 conviction for trespassing plainly occurred during the five-year statutory period and plaintiff's convictions and arrests prior to the statutory period support the CIS's finding. 8 C.F.R. §316.10(b)(3)(iii); 8 C.F.R. 316.10(a)(2); United States v. Hovsepian, 359 F.3d 1144, 1167 (9th Cir. 2004) ("the district court erred by not considering Appellees' convictions [prior to the statutory period] when arriving at its conclusions about good moral character."). Moreover, two conclusory affidavits attached to his opposition are insufficient to raise a genuine issue of material fact as to whether he has established "good moral character." Therefore, because there are no genuine issues of material fact, defendants' motion for summary judgment should be granted. Chan, 464 F.3d at 296.[6]

## V. CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS defendants' motion for summary judgment.

IT IS SO ORDERED.

Dated: March 9, 2009

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

---

[6] Given the Court's conclusion on the issue of plaintiff's "good moral character," the Court declines to reach the issue of whether plaintiff gave "false or misleading testimony."